JON Y. VANDERPOOL, ESQ. (SBN 161611)
JON CADIEUX, ESQ. (SBN 265155)
SMITH, STEINER, VANDERPOOL
   & WAX, APC
401 West A Street, Suite 320
San Diego, CA 92101
Telephone: 619-239-7200
Fax: 619-239-6048

Attorneys for Plaintiff
RASEAN JOHNSON

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RASEAN JOHNSON, an individual, )<br><br>              Plaintiff,<br><br>     v.<br><br>CITY OF SAN DIEGO; and DOES 1<br>through 5, inclusive,<br><br>              Defendants. | CASE NO. **'17CV410 L    NLS**<br><br>**COMPLAINT FOR DAMAGES<br>FOR:**<br><br>(1)   Religious Discrimination<br>(2)   Hostile Work Environment<br>(3)   Retaliation<br><br>**DEMAND FOR JURY TRIAL** |

## PARTIES & CLAIMS OVERVIEW

1.    Plaintiff Rasean Johnson ("Johnson") is a life-long resident of San Diego County and a third-generation San Diego City employee.  Initially hired as a Records Stock Clerk in the City's Downtown Government Administration Building in September 2004, Johnson's hard-work and consistently strong job performance quickly propelled him to a Supervisor position in the City Clerk's Office.  But, after he resisted and reported Deputy Director Shelia Beale's efforts to inject her personal religious beliefs into the workplace, the City removed his Supervisor job-title, transferred him to the

Public Utilities Department, and assigned him to the City's Chollas Operations Yard in Southeast San Diego, an objectively less-desirable work environment.

2. Defendant City of San Diego ("City" or "the City") is a municipal entity established by Charter, pursuant to the California Constitution, Article XI, § 3. It employs more than 19,000 individuals, organized into approximately 32 Departments, and is an "employer" as defined by 42 USC § 2000e(b).

## VENUE

3. Because the Defendant is the City of San Diego, and the acts giving rise to Johnson's claims arose in San Diego County, this judicial District is the proper venue under 28 U.S.C. § 1391(b)(1)-(3).

## JURISDICTION

4. Johnson's claims arise from Defendant's violation of Federal law, including Title VII of the Civil Rights Act. Accordingly, this Court has original jurisdiction to hear this case under 28 U.S.C. § 1331.

5. Prior to filing this action, Johnson exhausted his administrative remedies, submitting a grievance to the City of San Diego's Equal Employment Investigations Office on September 9, 2015, in accordance with his union's collective bargaining agreement. The grievance alleged Johnson's supervisor, Deputy Director Sheila Beale, harassed and discriminated against him on the basis of religion, and that her conduct created a hostile working environment. The City's ensuing six-month-long investigation revealed "sufficient evidence" in support of Johnson's complaint. The City communicated this to Johnson in a letter dated March 28, 2016. It is not known who investigators interviewed or what other actions were undertaken as part of the months-long investigation.

6. Despite sustaining Johnson's internal complaint/grievance, the City did not take any disciplinary or other remedial action against Beale. Instead, the City reassigned Johnson from the City Clerk's Office to an objectively less-desirable position in the

1   Public Utilities Department, resulting in diminished promotional opportunities and harm
2   to his professional reputation, among other deleterious repercussions.

3         7.    Dissatisfied with the City's response to its own investigatory findings,
4   Johnson filed a charge of discrimination with the Equal Employment Opportunity
5   Commission ("EEOC") on June 10, 2016.  Johnson requested an immediate right-to-sue
6   notice on January 17, 2017, which the EEOC is required to issue pursuant to 29 CFR
7   1601.28(a)(1).  EEOC Director Chris Green approved the request on January 25, 2017,
8   instructing the Department of Justice to issue a right-to-sue notice.  Johnson has thus
9   fully exhausted his administrative remedies.

10                            **GENERAL ALLEGATIONS**

11         8.    Johnson commenced his City employment with the City in September 2004
12   as a Records Stock Clerk in the City Records Management Department.  A third-
13   generation City employee, Johnson was proud to follow in the footsteps of his two
14   uncles, three cousins, great-uncle, and great-grandfather, who dutifully served the City
15   for 32 years.

16         9.    The Records Management Department supports the City Clerk and is
17   responsible for keeping, handling, and maintaining official City records, which it has
18   done for more than 100 years, as required by the City Charter and Municipal Code.

19         10.    Based on Johnson's strong and consistent job performance, the City quickly
20   promoted him from Records Clerk to Records Center Administrator in December 2005.
21   Around this same time, the City hired Shelia Beale as Records Analyst, a position similar
22   to Johnson's. Both reported to the then-Deputy Director, Kathryn Joy.

23         11.    Johnson respected Beale's enthusiasm and they worked collaboratively on
24   several major projects, helping make public documents more easily accessible and
25   improving the efficiency with which records are archived and retrieved.  His efforts
26   earned him a promotion to Records Supervisor in 2007, which included oversight of the
27   City Clerk's Imaging Center.  But fostering cooperation between himself and Beale grew
28   increasingly difficult amidst her consistently inappropriate comments about religion.

12.   A devout and very demonstrative Christian, Beale routinely injected her religious beliefs into the workplace.  In Fall 2008, California voters faced a ballot-initiative aimed at preventing same-sex marriage, commonly known as "Prop 8." After raising this controversial topic in the office, Beale asked Johnson if he thought it was "okay if gays marry."  When Johnson replied that he had no problem with people marrying whomever they want, Beale told him he was "not a child of God."  Another employee overheard this exchange and reported it to Deputy Director Joy.  She convened a 'counseling session' with Beale and Johnson, directed Beale to apologize, and told her that it was inappropriate to make such comments at work.

13.   Kathryn Joy retired from her position as Deputy Director April of 2011.  The City selected Beale as her replacement.  As Deputy Director, Beale reported directly to the City Clerk and was responsible for supervising the records and imaging department staff, including Johnson.

14.   But even after being promoted to Deputy Director, Beale continued to demonstrably and vocally profess her religious beliefs at work.  She led 'prayer sessions' during staff meetings, extolled her employees to attend church, and inquired about individuals' religious affiliations.  Although uncomfortable, Johnson bowed his head and sat quietly during Beale's prayers, indulging her need for religious rituals as they tended to keep her in a positive frame of mind.

15.   Johnson also did his best to ignore Beale's derogatory comments about his own personal beliefs, or at least her perception of them.  These comments, often made in front of his co-workers and subordinates, include telling him at a staff meeting in February 2009 that he and his significant other did not have a "blessed" relationship because they weren't "married under the Lord."

16.   Johnson received another promotion to Records and Imaging Supervisor in 2013.  Though he received an increase in pay, and increased responsibilities, the other aspects of his job remained the same and he continued to report to Deputy Director Beale. Working out of the City's Government Administration Building in Downtown San

-4-

Diego, Johnson oversaw a professional staff of approximately six employees, as well as everyone assigned to the City Clerk's office through the City's volunteer program.

17.     But despite his professional success, Johnson felt increasingly marginalized and stigmatized by Beale's hostile comments about religion, prompting him to apply for a job with the City of Chula Vista in 2013. Chula Vista ranked his application 13th out of more than 500 applicants and invited him for an interview. To Johnson's surprise, Beale sat on Chula Vista's Civil Service Commission and was thus part of the hiring panel. Chula Vista did not offer Johnson the position. Following this interview process, Beale's derogatory comments toward Johnson regarding religion increased in both frequency and intensity.

18.     In December 2013, while meeting with Johnson for his one-on-one performance review, Beale warned him that he better start reading his bible, because "even good people go to hell if they don't give their life to the word of God."

19.     In November 2014, Beale told one of Johnson's direct reports not to follow Johnson's directives because he was a "non-believer." This undermined Johnson's ability to effectively lead his team and carry out his Supervisory duties. It also represented the first step in Beale's campaign to force him out of the City Clerk's office.

20.     After Johnson took a brief bereavement leave in December 2014, Beale called him into her office, told him to "seek the word of God" and asked him to pray with her before resuming his job duties. Johnson told Beale he was uncomfortable and politely declined her request to pray.

21.     Following this incident, Beale sought to reassert her dominance and control by assigning Johnson to perform menial tasks outside his job description. For example, on July 25, 2015, Beale directed Johnson to extract hundreds of archived records from the storage facility basement for scanning, even though this task is one historically performed by Records Stock Clerks, the same entry-level position Johnson held when first hired in 2004.

22.   A few days later, on July 27, 2015, Beale announced the Department would be holding a "Christmas Celebration, not a winter celebration," and anyone that didn't like it, shouldn't attend. Although she addressed her comment to a group of employees, it was meant for Johnson, which she confirmed the following day when she lashed out at him in front of his co-workers and subordinates, saying he was not "blessed" and had "no credibility."

23.   On August 20, 2015, Beale directed Johnson to perform physical labor, moving heavy cabinets, shelving units, boxes, tables, and wood pallets out of the City's storage facility in preparation for painting. This required Johnson to use power tools and other equipment he had not been trained on, and resulted in him cutting his hand, tearing his dress pants, and inhaling significant amounts of dust. Based upon Beale's increasingly hostile comments about Johnson, attempts to undermine his authority with his staff, and assignment of menial and/or dangerous tasks, Johnson decided he could not keep quiet any longer and sought assistance from his labor union, the San Diego Municipal Employees Association ("MEA").

24.   MEA filed a grievance on behalf of Johnson and two other employees, with the City's Human Resources Department on September 9, 2015. The grievance alleged Beale had created a hostile work environment, harassed, and discriminated against Johnson and the other two employees. The City initiated a fact-finding process on September 27, 2015 and referred the alleged EEOC violations to its Equal Employment Investigation Department.

25.   Although the City told Beale about Johnson's grievance, it took no known, or meaningful measures, to protect Johnson from Beale's retaliatory treatment. It did not place her on paid leave, offer Johnson a temporary assignment, or change his supervisor to someone other than Beale. Accordingly, in October 2015, while the investigation was still pending, Beale removed Johnson's supervisory duties, reassigned his staff to another manager, and excluded him from projects that would normally fall within his job description.

26.     For example, upon receiving complaints from the City Attorney's Office that inactive records were not being picked up, Johnson intervened – offering to process the backlog and ensure the records were properly scanned and copies delivered to the appropriate parties.   Beale, however, told him the records center was no longer his responsibility and directed him not to process the inactive records.  She also prohibited him from assisting with the City's electronic records database, directing employees to contact the independent software vendor even though Johnson was fully trained and capable of handling the technical issues in-house.

27.     The City concluded its investigation of Johnson's grievance after a six-month investigation.  It sent Johnson a letter dated March 28, 2016, which said the investigation had found sufficient evidence to support Johnson's allegations, confirming the veracity of his complaints regarding Beale's misconduct.  The letter did not address what, if anything, the City would do to correct her conduct or protect Johnson from further retaliation.

28.     On April 21, 2016, the City's Human Resources Director, Judy von Kalinowski, told Johnson's MEA representative, Kelley Cruz, that transferring Johnson to a different department was the only solution the City could offer.  According to Kalinowski, this was being done as "a favor" to Johnson because, otherwise, he'd have to continue working for Beale.

29.     Former Deputy Director Kathryn Joy unexpectedly called Johnson three days later.  She said she had heard he was being forced out of the Clerk's Office and called to console and encourage him to give the new position a try.

30.     Johnson heeded Joy's advice and excelled in his new role, despite the undesirable conditions in which he now had to work.  As Records and Imaging Supervisor, Johnson managed a team of employees and worked in an air-conditioned, professional office in downtown San Diego among a diverse group of City employees, including the City Clerk and other high-ranking City Officials.  He now has no job title, reports to a Program Manager instead of a Deputy Director, and works in a hot, dirty,

industrial yard in East San Diego with approximately 100 other men and dangerous materials, including canisters of methane.

31. Johnson used to look at the City's official seal as a source of pride and inspiration but now its maxim, *Semper Vigilans* ("ever vigilant"), seems ironic and hypocritical. Johnson had done everything in his power to stem Beale's inappropriate conduct: participating in mediation, ignoring her derogatory comments, and avoiding unnecessary interactions. But Beale persisted. Even after the City's investigation confirmed Beale had engaged in unlawful conduct, it took no action against her and, instead, stripped Johnson of his Supervisor job title and transferred him to a remote job-site.

32. Ms. Beale continues to make derogatory comments about Johnson to City officials and he has been directed not to discuss the reasons for his transfer to the Public Utilities Department. As a result, his new supervisor and other City managers believe he was transferred for disciplinary purposes. Despite Johnson's more than 12-years' of outstanding job performance he now struggles under a tarnished reputation to salvage his once promising career.

### First Cause of Action

### Religious Discrimination [42 U.S.C. § 2000e-2]

33. Plaintiff incorporates paragraphs 1 through 32 by reference, as if fully set forth herein.

34. Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits employers from discriminating against an individual "with respect to his compensation, terms, conditions, or privileges of employment, because of his . . . religion." 42 U.S.C. § 2000e-2(a)(1). It is also unlawful for employers to "limit, segregate, or classify . . . employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee." 42 U.S.C. § 2000e-2(a)(2).

35.   The City of San Diego is engaged in an industry affecting commerce and employs more than fifteen persons.  Accordingly, it is an "employer" under Title VII.  42 U.S.C. § 2000e(b).  Deputy Director Beale acted as The City's agent with regard to the events and circumstances relevant to this complaint.

36.   Johnson has maintained an exemplary employment record over his 12+ years as a City Employee, including positive job performance assessments, promotions, and raises.

37.   Beale's repeated questions, comments, and derogatory remarks about Johnson and his religious beliefs evidence her perception that Johnson is a "non-believer," or at least does not share her faith.  Based on this perception, Beale initiated a series of escalating adverse employment actions against him - encouraging subordinates to refuse to follow his directives, telling co-workers he is not a "man of God" and lacks credibility, assigning him to perform menial tasks outside his job description, stripping him of all supervisory duties, and marginalizing his role in the Department.

38.   Despite its investigative findings, which confirmed Beale had engaged in the alleged misconduct, the City took no disciplinary action against her and, instead, gave Beale what she wanted by transferring Johnson out of her Department, removing him from a management position, and requiring him to work in a hot, dirty, industrial yard on the city's eastern boundary with Lemon Grove.

39.   As a result of Defendant's conduct, Johnson has suffered and continues to suffer economic losses, including harm to his professional reputation, lost earning capacity, and impaired chances for advancement.  He has also suffered non-pecuniary harm, including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.  Johnson also seeks to recover legal fees and costs incurred in attempting to remedy Defendant's unlawful conduct pursuant to 42 U.S.C. § 2000e-5(k).

///

///

///

## **Second Cause of Action**

## **Hostile Work Environment [42 U.S.C. § 2000e-2]**

40.     Plaintiff incorporates paragraphs 1 through 39 by reference, as if fully set forth herein.

41.     Under Title VII, an employer has an affirmative obligation to maintain a work environment free of harassment, intimidation and repeated insult.  This includes quid pro quo and hostile work environment harassment.

42.     Beale's persistent questions, comments, and discussion of religion, including leading group prayer at staff meetings and making derogatory remarks about Johnson being a "non-believer," and thus untrustworthy, are not only offensive and inappropriate for the workplace, they have deleteriously impacted Johnson' job, career, and professional reputation.

43.     Beale's comments about religion occurred on an almost daily basis from 2008 until the City transferred Johnson from the City Clerk's office to the Chollas Operations Yard in April 2016 due to the severity and pervasiveness of her harassment.

44.     Because Beale was Johnson's direct supervisor, the City is vicariously liable for the harassment and resulting tangible employment actions taken against Johnson, including her undermining his authority with subordinates, removing his supervisory duties, and assigning him to perform manual labor and menial tasks outside his job description.   Moreover, after Johnson reported the harassment and the City's investigation confirmed Beale had engaged in the alleged misconduct, it refused to restore his Supervisor job-title, reassigned him to a remote worksite, and directed him to keep the reason for his transfer a secret, even from his new manager.

45.     As a result of Defendant's conduct, Johnson has suffered and continues to suffer economic losses, including harm to his professional reputation, lost earning capacity, and impaired chances for advancement.  He has also suffered non-pecuniary harm, including emotional pain, suffering, inconvenience, mental anguish, and loss of

1   enjoyment of life.   Johnson also seeks to recover legal fees and costs incurred in

2   attempting to remedy Defendant's unlawful conduct pursuant to 42 U.S.C. § 2000e-5(k).

3
### Third Cause of Action

4
### Retaliation [42 U.S.C. § 2000e-3]

5       46.    Plaintiff incorporates herein by reference paragraphs 1 through 45, as if fully

6   set forth herein.

7       47.    Title VII also prohibits employers from retaliating against an employee for

8   engaging in protected conduct.  (42 U.S.C. § 2000e-3(a).)

9       48.    Johnson engaged in protected conduct when he opposed Beale's efforts to

10  inject her religious beliefs into the workplace by refusing to pray with her or follow her

11  directive to "get back to church."  He also engaged in protected conduct when he filed the

12  grievance regarding Beale's discriminatory and harassing behavior, and participated in

13  the ensuing investigation.

14       49.    Less than a month after Johnson filed his September 9, 2015 grievance, and

15  despite his consistently positive job performance, Beale removed his supervisory duties,

16  reassigned his staff to other managers, and directed him to perform menial tasks and

17  physical labor, including cleaning up bags of shredded records and preparing the storage

18  facility for painting.

19       50.    Although Beale told Johnson his changed role was the result of

20  "restructuring," she was unable to provide any reason why such restructuring was

21  necessary, or why it only impacted Johnson.  In reality, Beale took these actions in

22  retaliation for Johnson's grievance, in an effort to marginalize, ostracize, and force his

23  resignation.

24       51.    As a result of Defendant's conduct, Johnson has suffered and continues to

25  suffer economic losses, including harm to his professional reputation, lost earning

26  capacity, and impaired chances for advancement.  He has also suffered non-pecuniary

27  harm, including emotional pain, suffering, inconvenience, mental anguish, and loss of

28

1  enjoyment of life.   Johnson also seeks to recover legal fees and costs incurred in
2  attempting to remedy Defendant's unlawful conduct pursuant to 42 U.S.C. § 2000e-5(k).

3

4                              **PRAYER FOR RELIEF**

5          WHEREFORE, Plaintiff Rasean Johnson requests a jury trial and entry of
6  judgment against Defendant as follows:

7          1.      For back-pay and front-pay, according to proof;

8          2.      For damages to plaintiff's professional reputation;

9          3.      For compensatory damages, including emotional pain and suffering, mental
10 anguish, and loss of enjoyment;

11         4.      For injunctive and declaratory relief;

12         5.      For attorney fees and costs;

13         6.      For prejudgment interest on all amounts claimed; and

14         7.      For any other and further relief that the court considers proper.

15

16 Dated: February 28, 2017_____          SMITH, STEINER, VANDERPOOL
17                                             & WAX, APC

18

19                                         By:___/s Jon Vanderpool_____

20                                             Jon Y. Vanderpool
                                               Email: jvanderpool@ssvwlaw.com
21                                             Jon Cadieux
22                                             Attorneys for Plaintiff

23

24

25

26

27

28

-12-

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
RASEAN JOHNSON

## DEFENDANTS
CITY OF SAN DIEGO, and DOES 1 through 5, inclusive

(b) County of Residence of First Listed Plaintiff    San Diego
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    San Diego
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Jon Y. Vanderpool, Esq. / Jon Cadieux, Esq.
Smith, Steiner, Vanderpool & Wax    (619) 239-7200
401 West A Street, Suite 320, San Diego, CA 92101

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                                   *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
42 USC 2000e
Brief description of cause:
Religious Discrimination; Hostile Work Environment; Retaliation

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE
02/28/2017

SIGNATURE OF ATTORNEY OF RECORD
/s/ Jon Y. Vanderpool

**FOR OFFICE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____