UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RASEAN JOHNSON,<br><br>                     Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO,,<br><br>                     Defendant. | Case No.: 3:17-cv-00410-L-NLS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION [Doc. 16] FOR SUMMARY JUDGMENT** |

      Pending before the Court is Defendant City of San Diego's ("City") motion for summary judgment. (MSJ [Doc. 16].) Pursuant to Civil Local Rule 7.1(d)(1), the Court decides the matter on the papers submitted and without oral argument. For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the City's motion.

//
//
//
//
//
//
//

## I. BACKGROUND

This is a Title VII case concerning allegations of religious discrimination, retaliation, and hostile work environment suffered by Plaintiff Rasean Johnson, a current employee of the City. Johnson has worked for the City for more than a decade. From 2004 to 2016 he worked in the City Clerk's Office, most recently as an Administrative Aide II. (Johnson Dep. [Doc. 16-5] 23–25.) Sometime in 2009 or 2010, Sheila Beale ("Beale") was promoted to the position of Deputy Director in the City Clerk's Office, thus making her Johnson's direct supervisor. (Johnson Dep. 38–39.) Johnson alleges that Beale is a devout Christian, and he does not share her religious views. Per Johnson, this differing perspective on Christianity has created tension. As a result, Johnson alleges he suffered the following adverse employment actions:

- Fall 2008 – Beale asks Johnson if it is okay for gays to marry. (Johnson Dep. 106.)
- February 2009 – Beale tells Johnson that he and his significant other did not have a "blessed relationship" because they had not been married under the Lord. (Johnson Dep. 115–16.)
- December 2013 – During a performance review, Beale tells Johnson that "you better start reading your bible because even good people go to hell if they don't give their life to the word of God." (Johnson Dep. 127.)
- December 2014 – Johnson returns to work following a week of bereavement leave after his girlfriend's mother passed away. Upon his return, he had a conversation with Beale in her office. Beale asked him to come close then she grabbed his hands and started praying for him. Johnson interrupted Beale mid prayer, said he wanted to get back to work, and left her office. (Johnson Dep. 130–136; 143.)
- July 25, 2015 – Beale told Johnson to extract hundreds of archived records from a storage facility basement for scanning. Johnson maintains that such work is outside the scope of an Administrative Aide II's job duties. (Johnson Dep. 156–59.)

- July 27, 2015 – Beale tells the staff they will have a "Christmas celebration." (Johnson Dep. 159–161.) This comment was not specifically directed at Johnson, but at all staff. (Id.)
- July 28, 2015 – Johnson and another employee had a disagreement during a meeting. Beale told Johnson his credibility was shot, he was arrogant, a naysayer, and a speed bump. This had Johnson very upset, and he left for the day. The next day Beale reprimanded Johnson for "borderline insubordination. (Johnson Dep. 136–147.)
- August 20, 2015 – Beale told Johnson to get power tools and take down shelving. Johnson says this is outside the scope of his job description. (Johnson Dep. 162.)
- October 2015 – Beale removed Johnson's supervisory duties, reassigned staff to another manager, and excluded Johnson from some projects. (Johnson Dep. 67.)
- February 11, 2016 – Johnson receives an "out of office" email suggesting Beale stripped him of his role as Imaging Section Supervisor. (Doc. 18-5.)

In August 2015, Johnson approached Kelly Cruz ("Cruz"), his union representative, with complaints of religious discrimination and a hostile work environment. (JSUF ¶ 4.) On September 9, 2015, Johnson filed a grievance with the City, alleging discrimination, hostile work environment, and retaliation. (JSUF ¶ 5.) The City's Equal Employment Investigations Office ("EEIO") conducted an investigation into these allegations. (JSUF ¶ 5.) In a letter dated March 28, 2016, the EEIO informed Johnson that their investigation led them to conclude that "sufficient evidence exists to support your allegations." (EEIO Letter [Doc. 18–6].) Per the EEIO manager, this conclusion related more to violations of City policy than violations of Title VII. (Barclay Dep. [16–7].)

Johnson alleges that the work environment at the City Clerk's office worsened after he filed his grievance. He alleges Beale was generally rude to him, and made disparaging remarks to coworkers about his religion. Because Johnson saw a transfer out

3

3:17-cv-00410-L-NLS

1 of the City Clerk's office as the only way to escape Beale, he requested a transfer through
2 Cruz, his union representative.  The City responded with only one transfer option.  It
3 offered him the opportunity to transfer to the City's Public Utilities Department ("PUD")
4 and maintain his paygrade.  On April 26, 2016, Johnson accepted and transferred from
5 the City Clerk's Office to PUD.  (JSUF 16.)

Johnson contends that his working conditions at PUD are inferior to the conditions he worked under at the Clerk's Office.  To wit, Johnson's office at PUD is (or at least was) directly adjacent to the mens' restroom and connected to it via a vent cut directly into the partitioning wall (Doc. 18-11.)  It also is not air conditioned.  (Doc. 18-9.)  At PUD, Johnson was tasked with the supervision of a notoriously difficult employee (Doc. 18-10).  Furthermore, Johnson's position at PUD is a dead end position inasmuch as the City's adoption of electronic water meters will render it obsolete in a few years.  (Doc. 18–12.)

On June 10, 2016, Johnson filed a complaint with the Equal Opportunity Employment Commission, alleging discrimination and retaliation.  (Doc. 16–9.)  Johnson subsequently filed a complaint with this Court alleging religious discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964.  (Compl. [Doc. 1].)  On May 21, 2018, the City filed the instant motion for summary judgment.  (MSJ.)  Johnson opposes.  (Opp'n [Doc. 18].)

//
//
//
//
//
//
//
//
//

## II. LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Where, as here, "the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *See C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

If the moving party fails to discharge its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970). If the moving party meets the initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elect. Indus. Co., Ltd. v Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

//
//
//
//
//
//
//
//
//

## III. DISCRIMINATION AND RETALIATION

The City contends Johnson failed to exhaust his administrative remedies as to all of his claims. Exhaustion of administrative remedies is a prerequisite to filing suit under Title VII. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988). This requires a plaintiff to file a charge with the EEOC within one hundred and eighty days[1] of the complained of conduct and receive a right to sue letter. *Id.* (citing 42 U.S.C. § 2000e–5.) By filing a timely charge, a plaintiff exhausts administrative remedies as to any claim that "fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge…" *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994) (emphasis original). Failure to comply with the exhaustion requirement is grounds for dismissal absent application of any equitable defenses, such as estoppel or tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

Johnson filed his charge with the EEOC on June 10, 2016. (JSUF ¶ 17.) Absent exception, any conduct occurring before December 13, 2015 is therefore time barred. As to the majority of the complained of conduct, Plaintiff does not dispute that the one-hundred-and-eighty-day clock has ran. Rather, Plaintiff argues that the doctrines of equitable estoppel and / or equitable tolling save some of his otherwise time barred claims.

The doctrine of equitable estoppel provides that a defendant who successfully takes affirmative steps to prevent a plaintiff from filing a timely charge may not assert the statute of limitations as a defense. *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000) (overruled on other grounds). The Supreme Court has cautioned that courts should apply this doctrine sparingly. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). In analyzing whether the doctrine applies, a non-exhaustive list of

---

[1] Because Johnson never filed a claim with the California Department of Fair Employment and Housing, the three hundred day exhaustion period does not apply. 42 U.S.C. § 2000e-5(e)(1).

relevant factors includes (1) whether the plaintiff's delay in filing a charge was reasonable in light of the defendant's conduct; (2) whether evidence exists suggesting the defendant's conduct was specifically aimed at causing plaintiff to delay in filing a charge with the EEOC; and (3) whether the purposes of the statute of limitations have been fulfilled. *Santa Maria*, 202 F.3d at 1176 (*citing Naton v. Bank of California*, 649 F.2d 691, 696 (9th Cir. 1981)).

Johnson's estoppel argument relies entirely on the City's handling of the grievance he submitted through Cruz on September 9, 2015. Specifically, Johnson seems to contend that he would have submitted his EEOC charge earlier but for the City representing that it responds to all grievances in a prompt and appropriate manner. From this representation, Johnson claims to have inferred that there was no need to file an EEOC charge because the City would adequately resolve the matter internally.

The Court finds this argument unpersuasive. The City of San Diego and the EEOC are separate and distinct entities. Johnson presents no argument or evidence explaining why it was reasonable for him to think that, by submitting a grievance with the City, he excused himself from Title VII's requirement that he file a charge with the EEOC within one hundred and eighty days of the complained of conduct. Indeed, part of the purpose this statute at limitations is to provide the federal agency (here, the EEOC) an opportunity to address the complaint before it goes stale. *Dart v. Shell Oil Co.*, 539 F.2d 1256, 1261 (10th Cir. 1976). In filing an internal grievance with the City, Johnson did not fulfill this purpose.

Furthermore, Johnson presents no evidence suggesting that the City intentionally dragged out the investigation of Johnson's grievance in an effort to run out the clock on his Title VII claims. To the contrary, Johnson's evidence shows that the City concluded its internal investigation in just under six months. Cruz, Johnson's union representative, testifies that there was nothing unusual about this turnaround time. (Doc. 18-41.) For these reasons, Defendant is not equitably estopped from asserting the statute of limitations as a defense.

7

3:17-cv-00410-L-NLS

Nor was the statute of limitations tolled. The doctrine of equitable tolling focuses on the mindset of the plaintiff rather than the actions of the defendant. The doctrine tolls the Title VII clock if a plaintiff had neither actual nor constructive notice of the filing period. *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002). Johnson's tolling argument consists only of a conclusory assertion that the statute of limitations should be tolled. (Opp'n 4:15–15; 9:14.) This argument fails because it is unaccompanied by citation to any evidence suggesting Johnson was reasonably unaware of the filing period.

Because equitable estoppel and tolling do not apply, Johnson's discrimination and retaliation claims are time barred to the extent they are based on conduct occurring before December 13, 2015. The Court **GRANTS** the City's motion with respect to these claims. Johnson's discrimination and retaliation claims therefore survive 42 U.S.C. § 2000e–5 only to the extent they are based on the following alleged retaliatory / discriminatory actions:

1. The February 11, 2016 removal of Johnson's role as supervisor of the imaging department.
2. The April 2016 transfer to PUD.
3. The August 19, 2016 letter to Johnson's supervisor at PUD alerting her to the filing of Johnson's EEOC complaint.
4. Since Johnson's transfer continuing to present, Beale has made disparaging remarks about Johnson, telling his coworkers that he is a "nonbeliever" and not a "child of God". (Doc. 18-43.)

To establish a *prima facie* case under Title VII for reverse religious discrimination, a plaintiff need not show that he is a member of a protected class. *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168–69 (9th Cir. 2007). Rather, a plaintiff need only show that (1) his job performance was adequate, (2) he suffered an adverse employment action, and (3) similarly qualified employees were treated more favorably, or that other circumstances regarding the adverse employment action yield an inference of discrimination. *Id.*: *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 847 (9th Cir. 2004). To

establish a *prima facie* case of retaliation under Title VII, a plaintiff must show "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). Once a Plaintiff makes a *prima facie* showing on a Title VII discrimination or retaliation claim, the burden shifts to the Defendant to offer a legitimate (non-discriminatory, non-retaliatory) reason for the adverse employment action. *Brooks*, 229 F.3d at 928; *Fonseca*, 374 F.3d at 849; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If a Defendant meets this burden, the Plaintiff must show that there is a genuine issue of material fact as to whether Defendant's proffered justification is pre-textual. *Brooks*, 229 F.3d at 928; *Fonseca*, 374 F.3d at 849; *McDonnell Douglas Corp*. 411 U.S. at 804.

With respect to Johnson's timely allegations, the City argues that the complained of conduct is non-actionable because it fails to rise to the level of adverse employment action. In the context of Title VII discrimination claims, the Ninth Circuit defines "adverse employment action" broadly. *Fonseca*, 374 F.3d at 847. The term can encompass any decision by an employer affecting "compensation, terms, conditions, or privileges of employment." *Chuang v. Univ. of California Davis, bd. Of Trs.*, 225 F.3d 1115, 1125 (9th Cir. 2000) (quoting 42 U.S.C. § 2000e–2(a)(1)). To qualify as adverse, however, an employment action must be more disruptive than a confrontation involving a harsh exchange of words or mere inconvenience or alteration of job functions. *Michael v. Caterpillar Fin'l Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007).

For Title VII retaliation claims, the standard is more liberal. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006). In the retaliation context, an employment action is adverse if it could have the effect of deterring a reasonable employee from bringing or supporting a charge of discrimination. *Id.* at 68 (internal citations and quotation marks omitted.) "[P]etty slights, minor annoyances, and simple lack of good manners" are not enough. *Id.* Using these standards, the Court will consider whether the timely actions challenged by the City constitute adverse employment actions.

### A. Removal of Imaging Department Supervisory Role

Johnson contends that the City's action of removing him from his role as Imaging Department supervisor in February 2016 constitutes an adverse employment action.[2] In support of this contention, Johnson submits an out of office email sent to him by Beale. (Doc. 18-5.) In the email, Beale indicates that she is currently out of office and provides a list of currently available staff. One of the listed staff members was Elena Mendoza, identified as the "Imaging Supervisor." (Id.)

In its Reply, the City purports to argue that the alleged removal of Johnson's Imaging Department supervisory role does not rise to the level of an actionable adverse employment action. However, the City's argument neglects to provide any legal citation or explanation as to why this alleged conduct is not actionable as an adverse employment action. In any event, the Court need not consider this argument because the City did not raise it in their motion. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.") The Court therefore **DENIES** the City's motion with respect to the alleged removal of Johnson's role as Imaging Department supervisor.")

### B. Transfer to PUD

A lateral transfer can amount to an adverse employment action. *Ray v. Henderson*, 217 F.3d 1234, 1242 (9th Cir. 2000) (internal citations omitted). The City contends that the lateral transfer of Johnson to PUD cannot amount to an adverse employment action because Johnson requested a transfer and accepted the resulting offer to transfer to PUD.

---

[2] The City argues that (1)Plaintiff was never removed as Imaging Center supervisor prior to his transfer and that, (2) even if he was, the removal occurred in September 2015 and is therefore time barred. The email (Doc. 18–5) suffices to create a material dispute of fact as to the first issue. Beale's deposition testimony (Doc. 16-14, 139) that Johnson remained Imaging Center supervisor into 2016 suffices to create a material dispute of fact as to the second issue.

10

3:17-cv-00410-L-NLS

The City does not cite any authority suggesting that a lateral transfer is categorically non-actionable when requested and accepted by the employee.

Nor does the Court believe such a rule would be proper. Construing the evidence in favor of Johnson as the non-moving party, it seems that Beale may have reacted negatively to Johnson's grievance by, *inter alia*, not speaking to him and stripping him of some supervisory duties. The only option the City provided Johnson as a means of escaping Beale's alleged retaliation was a lateral transfer to PUD. The position at PUD appears to be much less desirable than his position with the Clerk's office, given that Johnson's position at PUD was a dead end position that involved working in an office with a direct vent to the men's room and supervision of a troubled employee.

Thus, because Johnson filed his grievance, he appears to have encountered a dilemma: endure continued retaliation from Beale or laterally transfer to a less desirable position. The prospect of facing such a dilemma could deter a reasonable employee from filing a grievance. It also amounts to a material change in the conditions of employment. Accordingly, the Court **DENIES** the City's motion with respect to the transfer of Johnson to PUD.

### C. Letter to Supervisor at PUD

On August 19, 2016, Barclay, the City's EEIO manager, sent a letter to the Deputy Director of PUD. It read

> Johnson… has filed charges with the [EEOC], alleging disparate treatment based on religion and retaliation. He is currently an Administrative Aide II in the [PUD].
>
> This communication is for your information only and should be kept confidential. Our office will be conducting an investigation. An independent investigation should not be initiated by your department as a result of this notification.

(Doc. 18-15.) In deposition, Barclay testified that such notification is standard operating procedure. (Doc. 18–16.)

11

3:17-cv-00410-L-NLS

Johnson contends that this letter is actionable as discrimination and / or retaliation under Title VII. (Opp'n 3:12–15.) The Court disagrees. No adverse employment action is stated where, as here, an employer, pursuant to a standard policy, notifies an employees' superior about an ongoing EEO investigation, urges the information to be kept confidential, and the employee presents no evidence of resulting harm. Accordingly, the Court **GRANTS** the City's motion with respect to the August 19, 2016 letter.

### D. Continued Disparaging Remarks

Johnson alleges he has heard from coworkers that Beale continues to make disparaging comments about him, calling him a "nonbeliever" and saying he is not a "child of God." Assuming for sake of argument that this hearsay testimony was admissible for purposes of the present motion, the Court finds that this name calling, uttered only to third parties, is not enough to materially alter the conditions of employment or deter a reasonable employee from engaging in protected activity. Indeed, even under the more liberal retaliation standard, "petty annoyances" and "minor slights" such as this do not qualify as adverse employment actions. *Burlington Northern & Santa Fe Ry. Co.*, 548 U.S. at 68. The Court therefore **GRANTS** the City's motion with respect to Beale's alleged disparaging remarks made to Johnson's coworkers after his transfer to PUD.

## IV. HOSTILE WORK ENVIRONMENT

To prevail on a religious hostile work environment claim, a plaintiff must show (1) that he was subjected to verbal or physical conduct of a religious nature; (2) the conduct was unwelcome; and (3) the severity and pervasiveness of the conduct altered the conditions of employment such that an abusive work environment resulted. *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995) (listing elements of a sexual hostile work environment claim); *Venters v. City of Delphi*, 123 F.3d 956, 974–75 (7th Circuit 1997)

(explaining that the same standard applies to both sexual and religious hostile work environment claims). The environment must be both subjectively and objectively hostile. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004). As with discrimination and retaliation claims, 42 U.S.C. § 2000e—5(e)(1) (the Title VII administrative exhaustion statute) applies. However, it requires only that one discrete act contributing to the hostile work environment occur within the 180 day period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).

Here, the City's motion for summary judgment clearly alerted Johnson to its argument that his religious hostile work environment claim was untimely. (MSJ 5:11–27.) Johnson nevertheless fails to cite in his opposition any admissible evidence suggesting he was subjected to verbal or physical conduct of a religious nature after December 13, 2015. Johnson testifies that his coworkers from the Clerk's Office told him that, after Johnson transferred to PUD, Beale told them that Johnson is a "nonbeliever" and "not a child of God." (Doc. 18-43.). However, this testimony is clearly hearsay under Fed. R. Evid. 802. Furthermore, pursuant to Fed. R. Civ. P. 56(c), the City specifically raised a hearsay objection to this testimony in their motion for summary judgment. (MSJ 21:26–22:2.) Johnson failed in his opposition to submit any supporting declaration testimony from his coworkers, make an offer of proof, or otherwise respond to this objection. The Court therefore finds this testimony inadmissible. Because there is thus no admissible evidence of a timely act contributing to the alleged hostile work environment, the claim is time barred under 42 U.S.C. § 2000e—5(e)(1). The City's motion is **GRANTED** as to Johnson's hostile work environment claim.

//
//
//
//

13

3:17-cv-00410-L-NLS

## V. CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS** the City's motion for summary judgment with respect to the following claims only:

- Johnson's hostile work environment claim.
- Johnson's discrimination and retaliation claims to the extent they are based on (1) conduct occurring before December 13, 2015; (2) the August 19, 2016 letter [Doc. 18-16] sent by Harold Barclay to Halla Razak; and (3) Beales's alleged disparaging remarks about Johnson's religion made to Johnson's coworkers.

As to all other claims, the Court **DENIES** the City's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: August 10, 2018

_____
Hon. M. James Lorenz
United States District Judge